CENTRAL MARKET, INC., APPELLEE, v. ALBERT E. KING: HOME OWNERS LOAN CORPORATION, GARNISHEE, APPELLANT.
272 N. W. 244
FILED MARCH 19, 1937. No. 29843.

*Hawthorne Arey,* for appellant.

*Monsky, Grodinsky, Marer & Cohen* and *J. Harold Saks,* contra.

Heard before GOSS, C. J., DAY, PAINE and CARTER, JJ., and TEWELL, District Judge.

PAINE, J.

This is an appeal from a judgment of the district court on a proceeding in error, reversing an order of the municipal court sustaining the special appearance of the Home Owners Loan Corporation, garnishee. In this opinion Central Market, Inc., will be styled the plaintiff, and is the only appellee in this court; Albert E. King was the defendant in the lower court, and the Home Owners Loan Corporation, garnishee, is the appellant in this court.

The Central Market, Inc., plaintiff, brought suit in the municipal court of Omaha and obtained a judgment on a grocery and meat bill against Albert E. King, an employee of the Home Owners Loan Corporation for the sum of $102.02 and costs. An execution was returned unsatisfied, showing that the said defendant, Albert E. King, had no property liable to seizure under execution. An affidavit was thereupon filed for garnishee summons, and the same was served by the constable upon the Home Owners Loan Corporation by serving I. S. McFarlane, its regional manager, in Omaha, Nebraska. The Home Owners Loan Corporation, garnishee and appellant, filed a special appearance, and after several continuances Judge Neble sustained the special appearance. Thereupon, a petition in error was filed in the district court for Douglas county by the plaintiff, and the garnishee and appellant filed its special appearance. The

same was argued and briefed in the district court, and the district judge overruled the special appearance and gave the garnishee 14 days to answer the summons. The motion for new trial being overruled, and supersedeas bond being fixed, said ruling of the district court is brought to this court. The parties have filed extensive briefs in this court.

As this is the first time that this important question has been presented to this court for determination, it might be of assistance, before discussing the authorities, to present a summary of the respective claims made by the parties to this lawsuit.

In the first place, there is no dispute between the parties as to the rules relative to the Nebraska law of garnishment, which is a purely statutory remedy, and will be interpreted more strongly against the garnishor. While the action was originally brought under the municipal code of Omaha, it is admitted that the section of that code is in all respects the same as the general statute of Nebraska in this regard.

Now, on its part, the appellant says that in 1932 congress established the Home Loan Bank, with a board of five members to conduct its affairs. It acted as a rediscounting agency for those holding mortgages on loans which could not be paid off, and its duties were very similar in many respects to those of the Federal Reserve Bank. In 1933 there was an amendment made to the original Home Owners Loan Act, providing for the Home Owners Loan Corporation, of which the entire capital stock was subscribed and paid for by the treasury of the United States for and on behalf of the United States government. Its business was to issue bonds against the mortgages which it held, and these bonds were guaranteed, both as to principal and interest, by the United States government. It had but a limited time to run, and when its purposes were completed all of the surplus funds in its hands were directed to be paid into the treasury of the United States. It was given the privilege of franking all of its mail in the same manner as all executive agencies of the United States. The provisions and rules under which it operated provided that it

could only refinance mortgages which could not be handled in any other way or by any other corporation. Its life as a loaning corporation having been limited, and having now expired, the Home Owners Loan Corporation is not making new loans, but is now in process of being liquidated. It can be seen from this very brief statement that it is the contention of appellant that this corporation was not, and is not now, in competition with any other loan corporation, for no other corporation could or would handle so-called "frozen" loans.

Now, on the other hand, it is claimed by the appellee that the Home Owners Loan Corporation was organized to engage in the business of loaning money on homes, which loans were evidenced by mortgages, and if any mortgage is not paid, and becomes in default, said corporation forecloses these mortgages and, if necessary, takes the title to the property in its name and later sells said property, the same as any other loan corporation. It is admitted that the government is exempt from garnishment when it acts in its sovereign capacity, but not when it is engaged in a business capacity. It is admitted that the Home Owners Loan Corporation is an agent or instrumentality of the United States government, but it is insisted that by its very form of organization it is, and has been, doing a commercial business in loans, and therefore appellee claims it is not entitled to any of the immunities to which the government itself is entitled, and that the Home Owners Loan Corporation should under the Nebraska law be made to answer a summons in garnishment, just the same as any other corporation. It is further admitted that one is required to go into the court of claims to bring an action against the government itself, but that the Home Owners Loan Act, 48 St. at Large, 128, ch. 64, title 12, U. S. C. A., sec. 1463, provides: "Creation of Home Owners Loan Corporation. Sec. 4. (a) The Board is hereby authorized and directed to create a corporation to be known as the Home Owners Loan Corporation, which shall be an instrumentality of the United States, which shall have authority to sue and to be sued in

any court of competent jurisdiction, federal or state, and which shall be under the direction of the board." Therefore, the appellee insists that such corporation does not have the immunity that the government has. In reply thereto the appellant insists that the waiver of immunity granted to the United States government is never to be implied, but must be clearly proved, and if this court holds that the Home Owners Loan Corporation must respond to the garnishee summons it can only be supported on the theory that said corporation was not performing a governmental function.

From this brief statement of the legal claims made by the parties, this court believes that the decision can be arrived at by finding the answer to this question: Was the Home Owners Loan Corporation engaged in a governmental function at the time the garnishee summons was served upon its regional manager in Omaha, Nebraska?

By reason of general public demand made upon our government during periods of economic disaster, several governmental corporations have been devised by congress to perform functions which would relieve many citizens who found themselves unable to save their property in the usual course of business. In several corporations of this nature the entire capital stock was owned by the United States government, yet in several cases where courts have been called upon to pass on this question they have held that when the government adopts the use of such a corporation, which was controlled and managed by its own officers, even though all its stock was owned by the United States, it must be regarded as a separate entity.

The special appearance in the case at bar is based on the theory that the Home Owners Loan Corporation is purely a governmental agency and performing a function of sovereignty, but abundant citations indicate that courts do not agree with this contention.

"When the United States enters into commercial business, it abandons its sovereign capacity, and is to be treated like any other corporation." *Salas v. United States,* 234

Fed. 842. "These precedents seem to warrant the conclusion that (1) it is not sufficient that a private corporation is an instrumentality of the United States to defeat the doctrine of separate entities; nor (2) is it sufficient that the government owns all of the stock in the corporation." *Langer v. United States,* 76 Fed. (2d) 817. See, also, *United States v. Pacific Forwarding Co.,* 8 Fed. Supp. 647; *Federal Land Bank v. Priddy,* 295 U. S. 229.

In the case of the Fleet Corporation, which was organized under the general law of the District of Columbia to purchase and construct merchant vessels, but in which the United States should be the majority stockholder, Justice Brandeis, in delivering the opinion in *United States, ex rel. Skinner & Eddy Corporation, v. McCarl,* 275 U. S. 1, 72 L. Ed. 131, said: "Being a private corporation, the Fleet Corporation may be sued in the state or federal courts like other private corporations; it does not enjoy the priority of the United States in bankruptcy proceedings * * * and its employees are not agents of the United States, subject to the provisions of sec. 41 of the Criminal Code." This holding that such a corporation did not have a priority in bankruptcy, which is reserved to the government, indicates a distinct line of cleavage between the rights and liabilities of such a corporation and the government.

Especially in point is the case of *Commonwealth Finance Corporation v. Landis* (Emergency Fleet Corporation, Garnishee) 261 Fed. 440, in which the court held: "In view of the legislation creating the United States Shipping Board Emergency Fleet Corporation, and of the fact that congress saw fit to act through a private corporation, *held* that, although the United States owns the stock of the corporation, it is not exempt from service of process, and may be garnished and sued, even though it may appear at trial that the matter is one relating to which the corporation is clothed with the attributes of sovereignty, and not subject to suit."

To a similar effect is the holding in the case of *Haines v. Lone Star Shipbuilding Co.* (United States Shipping Board

Emergency Fleet Corporation, Garnishee) 268 Pa. St. 92, 110 Atl. 788, also in 275 Pa. St. 260, 118 Atl. 909, from which last trial of this case we quote this holding: "The Fleet Corporation was not put in the place of the sovereign to share its immunity otherwise than as the sovereign allows, and the sovereign did not limit its liability when it engaged in this undertaking."

The question whether or not public policy requires that, even though the Home Owners Loan Corporation has all the attributes of a private corporation, yet, in regard to garnishment process, it must be regarded as governmental in its nature, is debatable. The only theory on which the rule of public policy has been applied is found in the many cases dealing with municipal corporations, wherein the reasoning is placed upon the ground that garnishment process would interfere with the acts of government. After an examination of the act creating the Home Owners Loan Corporation, and the purposes for which it was created, we are unable to find that in any respect it has the powers of either the executive, judicial, or legislative branches of government. The grounds necessary to support the theory of the public-policy rule do not exist in this case, and the rule of public policy is not applicable. By its very nature the Home Owners Loan Corporation is an instrumentality seeking to assist home owners in the payment of debts. An honest debt is always the basis of a garnishment proceeding, and therefore it would seem that this instrumentality of government would not be interfered with, but that it would be regarded as furthering its general purpose in requiring it to respond to a garnishee process, with a view to seeing that its funds are placed in the hands of persons to whom they are rightly due.

We find a very late case in *Gill v. Reese*, 53 Ohio App. 134, which involves the precise question presented in the case at bar. In this case Dr. A. H. Gill recovered a judgment in the municipal court of the city of Cleveland against Jacob Reese and garnisheed the Home Owners Loan Corporation. Upon being served, it filed a motion to quash the

service of garnishment process, which motion was sustained in the municipal court. Upon appeal it was said that it appears to present one issue: Is the Home Owners Loan Corporation subject to service of garnishment within the state of Ohio? The court says that congress passed an act June 13, 1933, effective that day, creating such corporation. The purpose of the act was to provide emergency relief with respect to mortgages on homes, permitting home owners to refinance mortgages when they could not secure relief elsewhere.

Section 7 of the articles of the Home Owners Loan Corporation provides as follows: "Said corporation shall have power to sue and shall be subject to suit as other corporations, and shall have the usual powers and immunities of corporations of the United States."

The Ohio court reviews many of the authorities cited in the case at bar, and concludes that a motion to quash garnishment proceedings would not lie for the reason that the corporation must be regarded as a private corporation, even though upon an answer being filed it should later develop that the corporation might partake of the character of a sovereign and be exempt from garnishment.

The broad principle of law applicable is set forth in the case of *Gould Coupler Co. v. United States Shipping Board Emergency Fleet Corporation*, 261 Fed. 716, wherein it is said that it is highly desirable that governmental agencies be subject to the same liabilities as other corporations similarly employed.

In *Graves Bros. v. Lasley*, 190 Ark. 251, 78 S. W. (2d) 810, decided in 1935, it was held that a check payable to a tenant by the secretary of agriculture, and in the hands of his local agent, was subject to garnishment in an action by his landlord for rent.

We admit some difficulty in arriving at the conclusion reached in this case, in view of some of the decisions cited by appellant, such as *McCarthy v. United States Shipping Board Merchant Fleet Corporation*, 53 Fed. (2d) 923, decided in 1931 by the court of appeals of the District of Co-

lumbia, in which case a motion of Miss Margaret M. Mc-Carthy *pro se* to proceed further in *forma pauperis* was denied on March 21, 1932 (285 U. S. 547, 52 Sup. Ct. Rep. 408), and process of garnishment denied.

Appellant relies on *Emergency Fleet Corporation, United States Shipping Board v. Western Union Telegraph Co.,* 275 U. S. 415, in which Justice Brandeis held that the Emergency Fleet Corporation was entitled to the right of priority in transmission of messages and the government rate extended to all executive departments of government, "not because it is an instrumentality of the government, but because it is a department of the United States within the meaning of the Post Roads Act." The facts are so entirely different that we cannot see how it would authorize us to refuse a garnishee process in the case at bar.

The appellant has furnished us a certified copy of an opinion rendered July 6, 1936, in the supreme court of Tennessee, entitled *Home Owners Loan Corporation v. Hardie & Caudle,* which discusses many of the same authorities, and decides adversely to our holding in the case at bar on the ground that the act does not disclose an express or implied intention to subject the Home Owners Loan Corporation to garnishment. With all due respect to that court, we have, after a careful examination of the same authorities, arrived at a different conclusion.

The appellant cites in its reply brief the case of *Smith v. Kansas City Title & Trust Co.,* 255 U. S. 180, 65 L. Ed. 577. We admit the importance of this case, in which the United States supreme court restored it to its docket for two rearguments, and in which Charles Evans Hughes and George W. Wickersham appeared as opposing counsel, and in which appears one of the dissents of Justice Holmes; yet a decision that the land banks have governmental power to the extent that the bonds they issue shall be exempt from federal, state and local taxation does not convince this court that the Home Owners Loan Corporation is exclusively engaged in carrying out a governmental function.

Because of the importance of the question to be deter-

mined, and the length and excellence of the briefs submitted, we have given much time to the examination of authorities in point, and can scarcely resist the temptation to further extend this opinion.

However, this court has reached the opinion that the Home Owners Loan Corporation is a distinct and separate entity from the government of the United States, and has conducted a very extensive loan and mortgage business, which is not an ordinary function of government. This corporation has the power to sue and be sued in all courts without reservation, expressed or implied. If the appellee eventually prevails, this corporation will simply be required to pay into court money in which it has no longer any interest, to meet a judgment obtained on a just debt of one of its employees.

In our opinion, the action of the trial court in directing the Home Owners Loan Corporation to answer as garnishee was right, and is

AFFIRMED.